IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CORDELIA LINDA EZENNIA and BYRON K. CARTER, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL ACTION NO.  H-10-5004 |
| WELLS FARGO BANK, N.A. and FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MA, | § § § § | |
| *Defendants.* | § § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On the 29th day of October 2012, this above cause came for trial before this Court.  Trial concluded on October 30, 2012.  After hearing the evidence and arguments of counsel, the Court makes the following findings of fact and conclusions of law.[1]

### Findings of Fact

1.     On February 10, 2005, Plaintiff Cordelia Linda Ezennia ("Ezennia") executed a Note made payable to Wells Fargo.  [Def. Ex. 1].  The Note was secured by a Deed of Trust executed by Plaintiffs.  [Def. Ex. 2].

2.     In April 2009, the Plaintiffs fell behind on their payments by failing to make the required monthly payment on the Note.  On May 17, 2009, Wells Fargo sent Ezennia a letter notifying her that the loan was in default and the total amount to cure the default and bring the loan current as of June 16, 2009 was $7,046.31.  [Def. Ex. 3].  The letter also informed Ezennia

---

[1] If any finding of fact is deemed to be a conclusion of law it is incorporated herein as a conclusion of law.  If any conclusion of law is deemed to be a finding of fact it is incorporated herein as a finding of fact.

.
.

that failure to cure the default by June 16, 2009 would result in acceleration of the maturity of the Note.  The Plaintiffs failed to cure the default by June 16, 2009.

3.      On July 31, 2009, Wells Fargo, by and through its foreclosure counsel, sent Plaintiffs a certified letter providing notice that Wells Fargo had elected to accelerate the maturity of the Note and notice of a non-judicial foreclosure sale scheduled for September 1, 2009.  [Def. Exs. 4-5].

4.      On or about August 5, 2009, the Plaintiffs requested that Wells Fargo review them for a possible loan modification.  Plaintiffs represented to Wells Fargo that they were experiencing a financial hardship due to loss of income.  On or about August 16, 2009, Wells Fargo initiated the loss mitigation review process and canceled the foreclosure sale scheduled for September 1, 2009.

5.      On October 15, 2009, Wells Fargo approved Plaintiffs for a trial payment plan under the Home Affordable Modification Program ("HAMP"), pursuant to which Plaintiffs were to make three (3) monthly payments in the amount of $2,083.73 beginning on December 1, 2009 (the "Trial Payment Plain").  [Def. Ex. 9].  Under the Trial Payment Plan, upon completion of the three (3) payments, Wells Fargo would review Plaintiffs for a possible loan modification.

6.      On February 1, 2010, after the Plaintiffs made the three (3) payments under the Trial Payment Plan, Wells Fargo commenced the loan modification review process.  Wells Fargo reviewed the Plaintiffs' loan for a possible modification in order to assist with their financial hardship.

7.      From February 2010 to June 2010, Wells Fargo experienced delays in the loan modification review process due to the United States Department of Treasury revising the terms and requirements related to HAMP loan modifications.  However, as of June 2010, Wells Fargo

needed additional information related to Plaintiff's monthly income and expenses from the Plaintiffs regarding the possible loan modification.  From June 10, 2010 through June 28, 2010, Wells Fargo was unable to reach the Plaintiffs by telephone when it was requesting information related to Plaintiffs' monthly income and expenses.  Thus, on June 28, 2010, Wells Fargo sent the Plaintiffs a letter notifying the Plaintiffs of Wells Fargo's inability to contact them (the "No Contact Letter").  [Def. Ex. 23].

8.      On or about July 1, 2010, Wells Fargo discovered the Property was encumbered with a second mortgage lien in the amount of $13,960.00 and a federal tax lien in the amount of $66,990.21.  [Def. Exs. 10, 31].

9.      As of July 6, 2010, the Plaintiffs had not responded to the No Contact Letter.  As a result, Wells Fargo declined to modify the Plaintiffs' loan.  On July 6, 2010, Wells Fargo removed the Plaintiffs' loan from loss mitigation, sent Plaintiffs a letter reflecting same and resumed foreclosure processing.  [Def. Ex. 11].

10.     On July 9, 2010, Wells Fargo, by and through its foreclosure counsel, sent Plaintiffs a certified letter providing notice of the non-judicial foreclosure sale scheduled for August 3, 2010.  [Def. Exs. 12-13].

11.     On July 14, 2010, Wells Fargo, by and through its foreclosure counsel, sent Plaintiffs a letter advising Plaintiffs that they could contact the firm's Homeowner's Assistance Department to discuss possible loan workout options which may have assisted Plaintiffs in avoiding foreclosure.   [Def. Exs. 14-15].  The letter further provided that Wells Fargo would continue with the foreclosure sale as scheduled "until such time as [Plaintiffs] have received written confirmation that Wells Fargo Bank, N.A. has approved [Plaintiffs'] loan workout."  *Id.*

12.     On or about July 20, 2010, Ezennia called Wells Fargo seeking a possible loan modification.  Wells Fargo advised Ezennia that the Plaintiffs must satisfy the federal tax lien encumbering the Property in order to resume the loan modification review process.  Ezennia advised Wells Fargo that she could not satisfy the tax lien before the August 3, 2010 sale.  Thus, Ezennia was on notice that she could not receive a loan modification, thereby avoiding foreclosure, unless she satisfied the tax lien.

13.     On July 22, 2010, Ezennia called Wells Fargo again to discuss a possible loan modification.  Wells Fargo advised Ezennia that before Plaintiffs' loan could be activated for loss mitigation review, Plaintiffs must submit proof that the federal tax lien on the Property had been satisfied and updated income and financial information.  Again, Ezennia was given notice that she could not receive a loan modification, thereby avoiding foreclosure, unless she satisfied the tax lien.

14.     On or about August 2, 2010, Wells Fargo rescheduled the August 3, 2010 non-judicial foreclosure sale for September 7, 2010.  Wells Fargo rescheduled the sale in order to provide notice of the sale to the Internal Revenue Service, which held a lien on the Property.

15.     On August 10, 2010, Wells Fargo, by and through its foreclosure counsel, sent Plaintiffs a certified letter providing notice of the non-judicial foreclosure sale scheduled for September 7, 2010.  [Def. Exs. 17-18].

16.     On August 16, 2010, Wells Fargo, filed notice with the Harris County Clerk related to the non-judicial foreclosure sale to take place on September 7, 2010.  [Def. Ex. 19].

17.     On August 25, 2010, Ezennia called Wells Fargo seeking a possible permanent loan modification.  On the same date, Plaintiffs sent in a hardship letter which stated that they

.
.

could not afford their mortgage and that a loan modification was "the only way [Plaintiffs] could afford to retain [their] home."  [Def. Ex. 20] (emphasis in the original).

18.     After the call, Wells Fargo sent Ezennia a letter dated August 25, 2010 with the subject line "Loan modification review in progress."  [Def. Ex. 21].  The letter stated that Wells Fargo was considering a loan modification that might "assist [Ezenia] in bringing the loan current." [Def. Ex. 21].  However, the letter advised Ezennia that "this letter is not a guarantee or approval of the loan modification."  *Id.*  In order to be considered for a loan modification, Ezennia was required to make a payment of $3,461.51 by September 1, 2010.

19.     At issue in this case is a paragraph in the letter which read: "Please be aware that until you are approved for a loan modification, your loan will remain in default status, including any foreclosure action that may be in process.  Foreclosure activity will not be suspended until you have returned the required initial payment."  *Id.*

20.     A representative of Wells Fargo testified that it interpreted the paragraph in the letter to mean that the foreclosure would be halted if two steps were completed.  First, Ezennia must submit the required good faith payment to Wells Fargo.  And second, upon receipt of the payment, Wells Fargo would review Ezennia's loan for modification.  If the loan modification review was not complete before the current foreclosure date, then the foreclosure would be postponed until the review could be completed.  If, however, the loan modification review was completed before the foreclosure date and the loan modification was not approved---as in this case---the foreclosure would go forward as planned.  In order for the foreclosure to be postponed indefinitely, Wells Fargo would have to receive the payment and approve the modification.

21.     Ezennia testified that based on the second sentence, she believed Wells Fargo promised her that if she sent the payment, the foreclosure would be halted.  Although, both she

and her husband testified that they knew the foreclosure would not be stopped indefinitely simply by sending the payment, they believed that the payment alone would postpone the foreclosure.

22.     On August 27, 2010, Wells Fargo called and advised Plaintiffs that, in order to review Plaintiffs for a possible permanent loan modification, Plaintiffs needed to submit their two most recent bank statements, information concerning their 2009 taxes and proof of residency.  [Def. Ex. 23].  On August 31, 2010, Wells Fargo called Plaintiffs again and Plaintiffs represented they would be faxing the requested information to Wells Fargo that day.

23.     On September 1, 2010, Ezennia made a payment in the amount of $3,461.51, which was placed into a suspense account by Wells Fargo.

24.     On September 2, 2010, Wells Fargo called Ezennia to discuss issues concerning Plaintiffs' monthly income and expenses.  The person who answered the phone hung up on the Wells Fargo representative.  [Def. Ex. 23].  Wells Fargo then called Ezennia at her cell phone number and left a message.  [Def. Ex. 23].

25.     On September 3, 2010, Wells Fargo reviewed Plaintiffs' loan for possible workout and loss mitigation options, including a loan modification, in order to assist with Plaintiffs' financial hardship.  Plaintiffs' ability to afford a modified payment, however, was not supported by their income.  [Def. Ex. 23].  Specifically, Wells Fargo's review revealed that the deficit between Plaintiffs' monthly expenses and income was too high to support a modified payment.  [Def. Ex. 23].  As a result, Plaintiffs' loan was not modified.

26.     At 8:14 a.m. on September 7, 2010, Wells Fargo attempted to contact Plaintiffs to advise them that they did not qualify for a loan modification.  [Def. Ex. 23].  Wells Fargo left a message on Ezennia's voicemail.  [Def. Ex. 23].  Shortly thereafter, at 10:44 a.m. on September

7, 2010, Ezennia called Wells Fargo and the Wells Fargo representative advised Ezennia that Wells Fargo was proceeding with foreclosure.  [Def. Ex. 23].

27.     On September 7, 2010 at 10:50 a.m. Wells Fargo sold the Property at a non-judicial foreclosure sale to Federal National Mortgage Association for $315,806.36.  At the date and time of the sale, the total amount due and payable under the Note and Deed of Trust was $315,806.36.  Wells Fargo did not apply Ezennia's payment of $3,461.51.  Those funds are still in a holding account with Wells Fargo.

28.     Despite the hardship letter she submitted to Wells Fargo to the contrary [Def. Ex. 20], Ezennia testified at trial that had Wells Fargo not given her the loan modification, she would have refinanced the house using other means.

29.     At the time of the sale, Plaintiffs did not have the funds to reinstate the loan. Further, in September 2010, Plaintiffs did not have the funds to satisfy the federal tax lien and could not afford to make the monthly payments on the loan required by the Note.

## Conclusions of Law

27.     Promissory estoppel is an exception to the statute of frauds that prevents a party from insisting on strict legal rights when it would be unjust to enforce them.  *"Moore" Burger, Inc. v. Phillips Petroleum Company*, 492 S.W.2d 934 , 936 (Tex. 1972).  However, promissory estoppel may also be used as a basis for the recovery of damages.  *Kenney v. Porter*, 604 S.W.2d 297, 303 (Civ. App.—Corpus Christi 1980, ref. n.r.e.); *Fretz Const. Co. v. Southern Nat. Bank, Etc.*, 626 S.W.2d 478 , 481-83 (Tex. 1981) (promissory estoppel gave contractor claim against bank for its promise to set aside sum of money for payments).

28.     The elements of a promissory estoppel claim are:  (1) a promise; (2) foreseeability by the promisor; (3) actual, substantial, and reasonable reliance by the promisee to its detriment;

and (4) injustice that can be avoided only by enforcement of the promise. *In re Weekly Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005). Promissory estoppel, however, may not be used to create a contract that does not otherwise exist. *Id.* at 96; s*ee also Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660 (Tex. App.—Fort Worth 2010, no pet.) (mem. op.) (noting that breach of contract and promissory estoppel are mutually exclusive claims).

29. When promissory estoppel is used to enforce a promise that would be unenforceable because of the statute of frauds, the promise must be a promise to sign an already existing written agreement that would itself satisfy the requirements of the statute of frauds." *Ellen v. F.H. Partners, LLC*, No. 03-09-00310-CV, 2010 Tex. App. LEXIS 9540, at *4 (Tex. App.—Austin 2010, no pet.) *citing Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. App.—Houston [14th Dist.] 2005, pet. den.). Moreover, such a promise must be sufficiently definite to be enforced. *Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 558 (Tex. App.—San Antonio, no writ); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 570 (Tex. App.—Dallas 1989, no writ); *e.g. Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141-42 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

30. To prevail, plaintiff must establish that its reliance on the defendant's promise was reasonable, substantial and detrimental. *Frost Crushed Stone Co. v. Odell Geer Constr. Co.*, 110 S.W.3d 41, 44-45 (Tex. App.—Waco 2002, no pet.). Reliance is substantial if the plaintiff shows that but for the promise, it would not have acted or refrained from acting. *English v. Fisher*, 660 S.W.2d 521, 524 (Tex. 1983).

31. Partial performance is another exception to the statute of frauds. *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex.App.–Dallas 2002, no pet.). "Under the partial performance exception to the statute of frauds, contracts that have been partly performed, but do

not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud." *Id.* (citing *Carmack v. Beltway Dev. Co.*, 701 S.W.2d 37, 40 (Tex.App.-Dallas 1985, no writ)). "The fraud arises when there is strong evidence establishing the existence of an agreement and its terms, the party acting in reliance on the contract has suffered a substantial detriment for which he has no adequate remedy, and the other party, if permitted to plead the statute, would reap an unearned benefit." *Id.*

32.    "The partial performance must be 'unequivocally referable to the agreement and corroborative of the fact that a contract actually was made.'" *Id.* (quoting *Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex.App.-Texarkana 1989, no writ)). "The acts of performance relied upon to take a parol contract out of the statute of frauds must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced; otherwise, they do not tend to prove the existence of the parol agreement relied upon by the plaintiff." *Id.* at 439–40.

33.    The measure of recoverable damages for promissory estoppel and partial performance claims is reliance damages—the amount necessary to restore the injured party to the position that would have been occupied if the party had not acted in reliance on the promise. *Id.* at 441; *Fretz*, 626 S.W.2d at 483. The damages recoverable in a case of promissory estoppel are not the profits the promisee expected, but only the amount necessary to restore the promisee to the position it would have been in had it not relied on the promise. *Frost Crushed Stone* 110 S.W.3d at 47

34.    Reliance damages are the same as "out of pocket" damages. *Hart v. Moore*, 952 S.W.2d 90, 97 (Tex. App.—Amarillo 1997, pet. denied). Reliance damages are the recovery of expenditures incurred in reliance on the purported promise or agreement. *Arthur Andersen v. Perry Equipment Corp.*, 945 S.W.2d 812, 817 (Tex. 1997). Stated differently, out of pocket or

reliance damages measure the difference between the value given by a claimant and the value received by a claimant. *Nelson v. Najm*, 127 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Reliance damages do not include an expectation interest. *Amigo Broadcasting v. Spanish Broadcasting System*, 521 F.3d 472, 486 (5th Cir. 2008).

35. The law's remedial goal in the area of promissory estoppel is to allow the victim to recover those damages which have arisen by virtue of the detrimental reliance by the victim on the promisor's averments -- i.e., those restitutionary measures necessary to put the victim back in the position he or she would have been in had the victim not relied on the broken promise in issue. *FDIC v. Perry Bros.*, 854 F. Supp. 1248, 1267 (E.D. Tex. 1994). However, even where the promisee has acted in reliance upon a promise to his detriment, the promisee is allowed to recover no more than reliance damages measured by the detriment sustained. *Wheeler v. White*, 398 S.W.2d 93, 97 (Tex. 1985). It is settled law that a party's damages based on promissory estoppel are "limited to the amount necessary to compensate that party for a loss already suffered." *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 734 (Tex. 1981); *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 708 (Tex. App.-Houston [1st Dist.] 1988, writ denied). Reliance damages are therefore measured by the detriment sustained, and all that is required to achieve justice is to put the promisee in the position he would have been in had he not acted in reliance upon the promise. *Wheeler*, 398 S.W.2d at 97 ("Since the promisee in such cases is partially responsible for his failure to bind the promisor to a legally sufficient contract, it is reasonable to conclude that all that is required to achieve justice is to put the promisee in the position he would have been in had he not acted in reliance upon the promise."); *Transcon. Realty Investors, Inc. v. John T. Lupton Trust*, 286 S.W.3d 635 (Tex. App.—Dallas 2009, no

pet.) (recovery under an estoppel or reliance theory is limited to reliance damages); *Exxon Corp. v. Breezevale, Ltd.*, 82 S.W.3d, 429, 441 (Tex. App.—Dallas 2002, pet. denied).

**A.     Wells Fargo made no actionable promise to Plaintiffs.**

32.     Wells Fargo made no actionable promise to Plaintiffs.  When the August 25, 2010 letter from Wells Fargo to Ezennia is read in context, it is clear that Wells Fargo merely promised to review Ezennia for a possible permanent loan modification, and to not foreclose during this review process, in exchange for a good faith, willingness payment of $3,461.51. Wells Fargo reviewed Plaintiffs for a loan modification from August 25, 2010 to September 3, 2010.  Plaintiffs did not qualify for a loan modification due to the deficit between Plaintiffs' monthly expenses and income.  As a result, no loan modification was approved and the Property was foreclosed upon on September 7, 2010.

33.     Despite Ezennia's belief, Wells Fargo did not promise to not foreclose on the Property on September 7, 2010 or indefinitely.  To the extent that Plaintiffs asserted the August 25, 2010 letter constituted a promise not to foreclose on the Property for an indefinite time period, such an alleged promise would not be sufficiently definite to be enforced.  *Gilmartin*, 985 S.W.2d at 558; *Gillum*, 778 S.W.2d at 570 (concluding that a vague and indefinite promise could not support claim for promissory estoppel).  Vague and indefinite statements about future events are insufficient to support a claim for promissory estoppel. *See  City of Beaumont v. Excavators & Constructors, Inc.*, 870 S.W.2d 123, 138 (Tex. App.—Beaumont 1993, writ denied) (concluding statement that amounted to speculation about future events and that did not set a time frame for performance of the alleged promise could not support claim for promissory estoppel); *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1281 (11th Cir. 2003) ("[P]romissory estoppel has no application where the promise relied upon is for an indefinite

duration."). The alleged promise upon which Plaintiffs' promissory estoppel claim is based is not sufficiently definite to be actionable. *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 503 (Tex. 1998) (concluding that a party may not reasonably or justifiably rely on an indefinite promise).

34.     Because Wells Fargo did not promise it would not foreclose on the Property, either on September 7, 2010 or indefinitely, judgment in favor of Wells Fargo is proper on Plaintiffs' promissory estoppel claim.

35.     For the same reasons, Plaintiffs have not met their burden to show "strong evidence establishing the existence of an agreement and its terms" sufficient to meet the requirements to succeed on a claim for partial performance.  Accordingly, judgment is proper on Plaintiffs' partial performance claim.

**B.     Plaintiffs did not reasonably or substantially rely on the alleged promise by Wells Fargo.**

36.     Additionally, the Plaintiffs did not actually, justifiably, and detrimentally rely upon the August 25, 2010 letter as a promise that Wells Fargo would not foreclose on the Property.  The letter does not promise to modify Ezennia's loan or forbear from foreclosing on the Property in September 2010.  The letter expressly states that "this letter is not a guarantee or approval of the loan modification."  The letter further provides that "until [Ezennia is] approved for a loan modification, [the] loan will remain in default status, including any foreclosure action which may be in process."  It is undisputed that Plaintiffs knew the Property was scheduled for foreclosure on September 7, 2010 and that the Property had been posted for foreclosure on at least two previous occasions.  It is also undisputed that Plaintiffs were not approved for a loan modification prior to September 7, 2010.  While it is true that the August 25, 2010 letter does state that "[f]oreclosure activity would not be suspended until [Plaintiffs] have returned the

required initial payment," the letter does not promise to modify Ezennia's loan or forbear from foreclosing on the Property in September 2010.

37.     It was not reasonable for Plaintiffs to rely upon the letter as a promise that their loan would be modified, or that the Property would not be foreclosed upon, because they were on notice that they could not meet the requirements for a loan modification.  Plaintiffs knew that foreclosure would occur if the loan was not modified.  And, they had been notified that the loan could not be modified unless the federal tax lien was satisfied.  Because Plaintiffs knew the federal tax lien had not been satisfied, and that they could not satisfy that federal tax lien prior to September 7, 2010, it was not reasonable for the Plaintiffs to rely on any alleged promise that Wells Fargo would not foreclose on the Property on September 7, 2010.

38.     Therefore, even assuming *arguendo* that Plaintiffs were able to show the existence of a promise or agreement, their claims fail as a matter of law because they could not have reasonably relied on those promises and judgment in favor of Wells Fargo is proper.

**C.     Wells Fargo could not have foreseen Plaintiffs' reliance on the alleged promise not to foreclose.**

39.     Wells Fargo could not reasonably foresee that Plaintiffs would interpret the August 25, 2010 letter as an alleged promise not to foreclose on the Property.  The letter was merely a promise to consider Plaintiffs for a loan modification prior to foreclosure, which Wells Fargo undisputably did.  The letter did not promise that foreclosure would be suspended indefinitely.  In fact, the letter stated that foreclosure would proceed unless Plaintiffs were approved for a loan modification.

**D.     No injustice would be avoided only by enforcement of the alleged promise.**

40.     To prevail upon a promissory estoppel claim, Texas courts require a "definite finding that injustice can be avoided only by the enforcement of the promise." *Shatteen v.*

*JPMorgan Chase Bank*, No. 4:10-CV-107, 2012 U.S. Dist. LEXIS 90499 (E.D. Tex. May 17, 2012) (citing *Clardy Mfg. Co. v. Marine Midland Business Loans Inc.*, 88 F.3d 347, 360 (5th Cir. 1996)). Promissory estoppel does not operate to create liability where it does not otherwise exist. *City of Beaumont,* 870 S.W.2d at 137. There is no injustice to Plaintiffs which can be avoided only by enforcement of the alleged promise by Wells Fargo not to foreclose on the Property. Plaintiffs knew they were going to be foreclosed upon if they did not make their mortgage payments, bring the loan current, satisfy the federal tax lien, or get a loan modification. Plaintiffs were simply unable to do any of those things.

41.     Plaintiffs ask the court to reverse the foreclosure and return them to their home. However, the record is clear that Plaintiffs could not get a loan modification from Wells Fargo. Moreover, despite Plaintiffs' argument that they would have gotten a loan from another party, there is no evidence in the record that they tried to do so even though they were on notice that their house was about to be foreclosed. And, the hardship letter that they submitted to Wells Fargo [Def. Ex. 20] stated that the loan modification was the only way they could stay in their house.

42.     Both promissory estoppel and partial performance are equitable in nature. And the equities do not weigh in favor of granting Plaintiffs the relief they seek even if they had shown that they met the predicate requirements---which they have not. Accordingly, Plaintiffs' claims for promissory estoppel and partial performance both fail.

## CONCLUSION

For the foregoing reasons, JUDGMENT is entered in favor of the Defendants on all of Plaintiffs' remaining claims.  Plaintiffs shall take nothing.

This is a FINAL JUDGMENT.

Signed at Houston, Texas on November 13, 2012.

Gray H. Miller
United States District Judge